*Decision will be entered under Rule 50.*

ESTATE OF EDWARD H. LUEHRMANN, DECEASED, JANE LOUISE HORD, FORMERLY JANE LOUISE LUEHRMANN, CHAS. D. LONG, AND AUGUST C. JOHANNINGMEIER, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63463. Filed November 18, 1959.

*Robert H. Batts, Esq.*, for the petitioner.

*James H. Martin, Esq.*, and *William A. Goffe, Esq.*, for the respondent.

### OPINION.

OPPER, *Judge:* This proceeding involves a deficiency in Federal estate tax in the amount of $203,020.17 determined against the Estate of Edward H. Luehrmann.

All of the facts were stipulated. They are hereby found.

The stipulation reflects certain concessions on the part of each of the parties. The only question for our consideration is whether executors' commissions and costs of administration which were claimed as deductions on the estate's Federal income tax returns, during the course of administration, and were not claimed as deductions on the estate's Federal estate tax return, as amended or supplemented, are required to be deducted from the gross estate in computing, for estate tax purposes, the value of a charitable bequest which consists of the income from the residue of the corpus of the estate following a life interest in said income. The parties have stipulated that the deficiency in Federal estate tax is $63,959.70 if we hold for respondent, and $39,535.57 if we hold for petitioners.

Edward H. Luehrmann (hereinafter referred to as the decedent) died on March 10, 1952, leaving a last will and testament which was duly admitted to probate in the Probate Court of the City of St. Louis, Missouri, on March 13, 1952. Decedent's Federal estate tax

return and "supplemental" Federal estate tax return were filed on May 26, 1953, and December 15, 1953, respectively, with the director of internal revenue, St. Louis, Missouri.

Under the terms of decedent's last will and testament, Jane Louise Luehrmann, Leo S. Rassieur, and August C. Johanningmeier were named as executors and were duly qualified. On May 29, 1954, Jane Louise Luehrmann remarried and is named in the Probate Court as Jane Louise Hord. On May 29, 1955, Leo S. Rassieur died and Chas. D. Long was appointed as successor executor and was duly qualified.

Under the terms of his last will and testament, decedent gave, devised, and bequeathed the residue of his estate in trust. The income for her life (with the exception of two relatively minor income bequests) was to be paid to his sister-in-law, now Jane Louise Hord, and at her death in perpetuity to Washington University, a corporate charitable institution organized and existing under the laws of the State of Missouri. The applicable provisions of the will are as follows:

ITEM VII: I direct that all the rest, residue and remainder of my estate, of whatever kind or character, and wheresoever the same may be situated, whether the same be real, personal or mixed, of which I may die seized or possessed, or to which I may be entitled at the time of my death, including any and all legacies or devises herein contained which shall have lapsed, shall pass to my sister-in-law, Jane Louise Luehrmann, Leo S. Rassieur and the St. Louis Union Trust Company, a corporation of the City of St. Louis, Missouri, as Trustees upon the trusts, for the use and benefit of those hereinafter named, and with the powers and duties hereinafter set out, to-wit:

*　　　*　　　*　　　*　　　*　　　*　　　*

(5) I direct the Trustees after paying all expenses of administering said trust, including compensation of the Trustees, to pay to Herbert Sharp, who is now in my employ, the sum of One Hundred Thirty Dollars ($130.00) per month, and Mary Krause, who is now also in my employ, the sum of Eighty Dollars ($80.00) per month for and during the period of their respective natural lives, but only so long as each of them respectively shall remain in the service of my said sister-in-law, Jane Louise Luehrmann, or shall have left her service in a manner which she is willing to certify in writing to the Trustees was satisfactory to her and with her approval.

After making the foregoing payments I direct my said Trustees to pay over to my said sister-in-law, Jane Louise Luehrmann, for and during the period of her natural life all the balance of the net income from said trust estate in monthly or other convenient installments. I further direct that from and after the death of my said sister-in-law the entire net income from said trust fund, after making the monthly payments required to be made to Herbert Sharp and Mary Krause, shall be paid to Washington University, a corporation under the laws of Missouri, for the use and benefit of its medical school to be used and applied by said medical school for scientific study, research, and experimentation to discover the causes, treatment, relief and cure of degenerative diseases such as diabetes, heart disease and circulatory diseases, such study, research and experimentation to be conducted by and under the supervision

and direction of full time professors in said medical school, so long as the said Washington University shall maintain a department in its medical school for such study, research and experimentation.

During the course of administration of the estate the following costs of administration and executors' commissions (hereinafter sometimes collectively referred to as administration expenses)[1] were claimed as deductions on the estate's Federal income tax returns: $1,260.97 for the year 1952; $78,204.12 for the year 1953; $29,265.31 for the year 1954; and $12,381.28 for the year 1955. These administration expenses were not claimed as deductions on the estate's Federal estate tax return.

Petitioners filed a statement and waiver referring to section 162(e), I.R.C. 1939, with its income tax return for the taxable year 1953.

In determining the estate tax deficiency, respondent deducted the administration expenses totaling $121,111.68 mentioned above from the corpus of the gross estate in computing, for estate tax purposes, the value of the charitable bequest. Petitioners contend that such administration expenses should not be so deducted.

We agree with respondent that under the terms of the will the charitable bequest herein consists of a remainder interest in the residue of the estate following a life interest therein and is not to be computed as a "percentage of the taxable estate" as stated by petitioners. Cf. *William Nelson Cromwell et al., Executors*, 24 B.T.A. 461; *Estate of Leonard S. Waldman*, 46 B.T.A. 291; *Hartford Nat. Bank & Trust Co.* v. *United States*, (D. Conn.) 106 F. Supp. 76. Thus, the real disagreement of the parties is as to the value of the residue of the estate which must be used in computing the present value of the remainder interest therein. The disagreement as to the value of the residue is, in turn, due entirely to their differences with respect to whether the executors' commissions and costs of administration mentioned above are to be deducted from the corpus of the estate in determining the present value of the income therefrom which decedent bequeathed to Washington University.

The residue of the estate (sometimes referred to as the residuary estate) has been defined as that which remains after all debts and expenses of administration, as well as all specific bequests and devises, have been paid or satisfied. Black's Law Dictionary (4th ed.); *Nichols* v. *Swickard*, 211 Iowa 957, 234 N.W. 846, 847. See also *In re Cushman's Estate*, 143 Misc. 432, 257 N.Y. Supp. 582, 586; *Brown* v. *Hilleary*, 147 Ore. 185, 32 P. 2d 584, 587.

It may well be that petitioners had the right to deduct some of the administration expenses from the gross income of the estate for

---

[1] Under Regs. 105, sec. 81.32, "Administration expenses include (1) executor's commissions; (2) attorney's fees; and (3) miscellaneous expenses."

the purpose of computing the estate's Federal income tax liability. This right would be derived from section 23 of the Internal Revenue Code of 1939, and is predicated upon the provisions contained in section 161(a)(3) that "[i]ncome received by estates of deceased persons during the period of administration or settlement of the estate" is subject to the same income taxes as are imposed upon individuals, and the provisions contained in section 162 that the net income of the estate "shall be computed in the same manner and on the same basis as in the case of an individual," with certain exceptions, including the qualification contained in section 162(e).

We may also agree with petitioners that, having elected to deduct administration expenses from the gross income of the estate for income tax purposes, the estate is not permitted, because of the provisions of section 162(e),[2] thereafter to deduct again such expenses from the gross estate for estate tax purposes.

But we agree with respondent's argument that the amount deductible from the gross estate for the valuation of a charitable bequest may not be greater than the value of what the charitable corporation is actually entitled to and does, in fact, receive. *Harrison* v. *Northern Trust Co.*, 317 U.S. 476.

At one time it was thought that Congress intended charitable residuary bequests to be deductible at their gross value without reduction for any costs or administration expenses. *Edwards* v. *Slocum*, 264 U.S. 61. Congress promptly corrected this assumption by enacting what is now section 812(d), I.R.C. 1939.[3] And the

---

[2] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(e) Amounts allowable under section 812(b) as a deduction in computing the net estate of a decedent shall not be allowed as a deduction under section 23, except subsection (w), in computing the net income of the estate unless there is filed, within the time and in the manner and form prescribed by the Commissioner, a statement that the items have not been claimed or allowed as deductions under section 812(b) and a waiver of the right to have such items allowed at any time as deductions under section 812(b).

[3] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers \* \* \* to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes \* \* \*. If the tax imposed by section 810, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this paragraph, then the amount deductible under this paragraph shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes. The amount of the deduction under this subsection for any transfer shall not exceed the value of the transferred property required to be included in the gross estate. \* \* \*

purpose of this legislation was declared to be "to limit the deduction for charitable bequests, etc., to the amount which the decedent has *in fact and in law* devised or bequeathed to charity." H. Rept. No. 708, 72d Cong., 1st Sess., pp. 49-50. (Emphasis added.)

In general, where, as in the case of section 812, the Federal statute, expressly or impliedly, under its operation, depends upon local law, the local law governs. See *Estate of Jean S. Alexander*, 25 T.C. 600. Here, as petitioners imply in their reply brief, it appears that local law would require the estate's costs of administration and executors' commissions to be payable from the corpus and not from the income of the estate. See *Estey* v. *Commerce Trust Co.*, 333 Mo. 977, 64 S.W. 2d 608. We could dispose of the issue on that basis alone—that is that "in law" decedent bequeathed only the net residue to charity. See *Hardenbergh* v. *Commissioner*, (C.A. 8) 198 F. 2d 63, certiorari denied 344 U.S. 836, affirming 17 T.C. 166.

But in addition, as to the "fact," there is no evidence whether the administration expenses in question were paid out of current income or out of the estate corpus. If they were in fact paid out of corpus, then the corpus was reduced by that amount, the bequest to charity would be similarly diminished, and the charitable deduction would have to be adjusted accordingly. Since there is no proof and since the burden is on petitioners, it would appear that this alone would be sufficient to defeat the claim.

We may go further, however, and consider the possible alternatives. Either these administration expenses were paid out of corpus or they were paid out of current income. If they were in fact paid out of corpus, the charitable deduction would, as we have said, necessarily be reduced accordingly. But even if they were paid out of income, the only possible assumption is that the payment was so made with the consent and approval of the income beneficiary who would, if she had insisted, have been entitled to the current income. This being so, any payment of the administration expenses out of money to which the life beneficiary was entitled would have constituted a contribution by her to the charity and not by the estate. *Estate of Herman Hohensee, Sr.*, 25 T.C. 1258. And her approval must be assumed since as we have seen, without it the local law would have required that the current income be paid to her without deduction for such expenses.

Respondent's rulings respecting the amount of the permissible marital exemption when expenses have been deducted on an estate's income tax return, upon which petitioners rely, are in reality applications of the principles above described and in fact support and are consistent with respondent's position here. Rev. Rul. 55-225, 1955-1 C.B. 460; Rev. Rul. 55-643, 1955-2 C.B. 386.

Finally, petitioners' reliance on section 162(e), I.R.C. 1939, seems to us misplaced. That provision was intended to deal solely with the amount of administration expenses deducted from the gross estate in order to compute the net estate upon which estate tax would be paid. It is clear that the option and waiver provisions were inserted to prevent a double deduction on both income and estate tax returns. H. Rept. No. 2333, 77th Cong., 2d Sess. (1942), pp. 75–76; S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), p. 136. This is not our present problem. Decedent left the income from the net residue of his estate to charity. We are required only to determine the value of that bequest. Payments claimed as reductions of income which are in reality payable out of, and deductions from, corpus, result in a correspondingly lesser amount of the net residue and consequently of the amount which decedent intended to go to the charitable beneficiaries.

Reviewed by the Court.

> *Decision will be entered that there is a deficiency in the amount of $63,959.70.*

WITHEY, J., concurs in the result.

---

BRUCE, J., dissenting: In my opinion the facts and circumstances of this case require a conclusion contrary to that made by the majority. Accordingly I respectfully dissent on all of the grounds relied upon in the majority opinion.

The first ground relied upon in the majority opinion is that local law would require the estate's costs of administration and executors' commissions to be payable out of the corpus and not from the income of the estate, citing *Estey* v. *Commerce Trust Co.*, 333 Mo. 977, 64 S.W. 2d 608.

In my opinion the *Estey* case does not go so far. Although somewhat difficult to analyze, it may safely be said that the *Estey* case deals with two major problems: One having to do with the construction of a will as to when the testator intended payments of income to the life tenant to begin; and the second, having to do with "general law relating to and arising from the relation of life tenant and remainderman." As to the first major problem, the court therein, in substance, held that where income-producing property is given by will to a trustee, with direction to pay over income to named parties, it is presumed that the testator intended the benefits to begin at once, rather than at the termination of administration, unless a contrary intent is shown. Since a contrary intent was not shown, but rather it appeared that the life income beneficiaries were two

daughters and a daughter-in-law, all three indigents to whom the testator had been rendering substantial aid during his lifetime, it was held that the testator intended income from the trust estate should be paid to them from the date of the testator's death. There is nothing in the instant case to indicate either a need of the life tenant for immediate financial aid or an intent on the part of the testator that she should receive the entire income from the estate from the date of testator's death. On the contrary, the will provides for the establishment of a trust and payment of the income of the trust by the trustees "after paying all expenses of administering said trust."

The second major problem in the *Estey* case which the court therein characterized as questions "not of the construction of the will, but of the general law relating to and arising from the relation of life tenant and remainderman," involved questions of what expenditures were chargeable against the life tenants and what were chargeable against remaindermen. Pointing out that, in general, expenditures should be charged against the person or estate benefited thereby, the court discussed various types of expenditures, some of which it stated are chargeable to the life tenant, some should be charged against the corpus of the estate administered by the executor, and some should be apportioned against the life tenant and the remaindermen. Inasmuch as the trial court had not passed on the question of "whether each and all, or what ones, of the items of expenditures made by the executor were properly chargeable against the life tenants and which against the remaindermen," nor was the case briefed on that theory, the appellate court concluded that the facts as to some of the items needed to be developed and remanded the case for new trial.

It might here be noted that such categorization of items of estate expenses is not peculiar to Missouri. Under the Federal estate and income tax statutes certain items of expenditures are deductible only for estate tax purposes, certain items are deductible only for income tax purposes, and certain items may be deductible for either estate or income tax purposes but not for both. For general discussion of such types of expenses, see 4 Mertens, Law of Federal Gift and Estate Taxation, sec. 26.56, and in particular footnote 30 thereunder.

The case of *Estey* v. *Commerce Trust Co.*, *supra*, does not hold that all expenses incurred in the administration of an estate are to be paid from the corpus and not from the income of the estate. There is even less evidence in the instant case than in the *Estey* case as to the character of the items which made up the total figures stipulated. To hold that the expenses with which we are here concerned were

expenses which local law would require to be deducted from the corpus of the estate and not from the income it is necessary to go outside the record presented and find that the various items of expenses making up the total amounts stipulated were of a type or types which Missouri law would require to be deducted from estate corpus only. For reasons hereinafter discussed, this, in my opinion, is improper.

Even though, upon suit of the life beneficiary herein, the courts of Missouri might have held that the administration expenses here involved were deductible from the corpus and not from the income of the estate I am nevertheless of the opinion such State court ruling would not be controlling upon this Court in the instant case. Under section 162(e)[1] amounts allowable as a deduction in computing the net estate of a decedent under section 812(b),[2] including costs of administration, *shall not be allowed* as a deduction in computing the net income of the estate under section 23, *unless* there is filed a statement that the items have not been, and will not be, claimed as deductions under section 812(b) at any time. The reverse would appear to be a reasonable conclusion, that is, that where administration expenses have been claimed and allowed as a deduction in computing the net income of the estate such expenses are not "allowable" expenses under section 812(b) and may not be deducted in computing the net taxable estate. Since, under such circumstances, such expenses may not be deducted from gross estate in computing the net estate, it necessarily follows that they may not be deducted for the purpose of determining the present value of a charitable remainder interest in the residuum of the estate, which present value

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \*

(e) Amounts allowable under section 812(b) as a deduction in computing the net estate of a decedent shall not be allowed as a deduction under section 23, except subsection (w), in computing the net income of the estate unless there is filed, within the time and in the manner and form prescribed by the Commissioner, a statement that the items have not been claimed or allowed as deductions under section 812(b) and a waiver of the right to have such items allowed at any time as deductions under section 812(b).

[2] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \*

(b) EXPENSES, LOSSES, INDEBTEDNESS, AND TAXES.—Such amounts—
    (1) for funeral expenses,
    (2) for administration expenses,
    (3) for claims against the estate, and
    (4) for unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,
as are allowed by the laws of the jurisdiction, whether within, or without the United States, under which the estate is being administered, \* \* \*

is to be deducted from the gross estate in computing the net taxable estate.

As a second ground the majority opinion states:

there is no evidence whether the administration expenses in question were paid out of current income or out of the estate corpus. If they were in fact paid out of corpus, then the corpus was reduced by that amount, the bequest to charity would be similarly diminished, and the charitable deduction would have to be adjusted accordingly. Since there is no proof and since the burden is on petitioners, it would appear that this alone would be sufficient to defeat the claim.

I think it inappropriate, under the facts and circumstances of this case, to rest the Court's decision on failure of the petitioners to adduce evidence that the expenses in question were not paid out of the corpus of the estate. Attention is called to the fact that this case was submitted on what was represented to the Court as a complete stipulation of facts. At the time the written stipulation was received and made a part of the record herein it was assumed by the Court, without then having read the same, that the stipulation contained a statement of all the facts essential to a proper determination of the liability of the petitioners under the statutes involved. When the stipulation was presented, and before it was received, the question was asked of counsel whether it was a complete stipulation of facts and counsel for both the parties assured the Court it was "a complete stipulation of facts." Although the stipulation is not as detailed as might be desirable, nevertheless, since neither party, on brief, has raised any question of failure of proof, I deem it inappropriate for the Court to dispose of the case on that ground. Particularly is that so where, as here, after making certain concessions and setting forth the respective contentions of the parties as to the value of the remainder interest passing to Washington University under the will of the decedent, the parties have stipulated that the deficiency in Federal estate tax is a certain amount "if the Court decides the issues now before it in favor of respondent" and another, or lesser amount "if the Court decides the issues now before it in favor of the petitioners." It is also to be noted that in the statement attached to the deficiency notice respondent did not rely upon lack of substantiation or failure of proof to establish that the expenses involved were paid out of income.

I recognize that the Court is not bound by a stipulation of facts which appears to be contrary to fact as disclosed by the record, *William Ernest Seatree*, 25 B.T.A. 396, and also that the Commissioner's determination of a deficiency may not be disapproved because predicated upon erroneous grounds stated in the deficiency notice, if it otherwise appears to be correct, *A. Finkenberg's Sons, Inc.*, 17 T.C. 973. Where, however, neither of these conditions is

present and there is no evidence before the Court except the stipulation of facts, it is, in my opinion, the duty of the Court to base its opinion upon such facts. *Iowa Bridge Co.* v. *Commissioner*, 39 F. 2d 777 (C.A. 8), reversing 14 B.T.A. 1048. See also *Norfolk Nat. Bank of C. and T.* v. *Commissioner*, 66 F. 2d 48 (C.A. 4), reversing 26 B.T.A. 1111. In *Weaver* v. *Commissioner*, 58 F. 2d 755 (C.A. 9), the Court stated, "He [respondent] must be bound by the reasonable interpretation of the facts upon which he has agreed to submit the case." Stipulations are generally entered into to save time, trouble, and expense; they ought not to be used as a pitfall.

The only other case of which I am aware, submitted upon a complete stipulation of facts, in which this Court or its predecessor, the Board of Tax Appeals, has determined the case solely upon the failure of proof, is that of *Roy & Titcomb, Inc.* v. *Commissioner*, 23 B.T.A. 12. In that case the Board held that "[f]or lack of evidence as to the true facts in this case, the determination of the respondent that the petitioner realized a profit of $28,066.33 upon the sale [of petitioner's investment in a subsidiary corporation] is sustained." It is to be noted, however, that the opinion in that case was later vacated and set aside and the case resubmitted upon an amended stipulation (24 B.T.A. 969).

In my opinion, it is inappropriate for the Court to base its opinion in this case upon failure of proof.

The majority opinion further states that even if the expenses involved were paid out of income, "the only possible assumption is that the payment was so made with the consent and approval of the income beneficiary who would, if she had insisted, have been entitled to the current income." Hence, it is stated, "any payment of the administration expenses out of money to which the life beneficiary was entitled would have been a contribution by her to the charity and not by the estate." I do not agree, however, that the life income beneficiary, even if she had insisted, would have been entitled to the entire current income. As previously pointed out herein, there is nothing in the record in the instant case to indicate either a need of the life beneficiary for immediate financial aid or an intent on the part of the testator that she should receive the income from the estate undiminished by expenses. On the contrary, the will provides for the establishment of a trust and payment of the income from the trust by the trustees "after paying all expenses of administering said trust."

This brings us to what I consider the most important question in the case—the effect on estate tax deductions of the waiver under the income tax provisions of section 162(e).[3]

---

[3] For a general discussion of this subject see 4 Mertens, Law of Federal Gift and Estate Taxation sec. 26.56, pp. 241–250.

A brief review of the scope and plan of the Federal estate tax may be helpful.

Section 810 of the Internal Revenue Code of 1939 provides that a tax, based upon the rates set forth therein, shall be imposed upon the transfer of the *net estate* of every decedent, citizen, or resident of the United States. The value of the net estate, upon the transfer of which the tax is imposed, is determined by deducting from the value of the gross estate certain exemptions and deductions as provided in section 812. Among such deductions are those set forth in section 812(b), including administration expenses, and the amount of all bequests, legacies, devises, or transfers, for public, charitable, and religious uses, as set forth in section 812(d).[4]

I agree with respondent, as have the majority, that, under the terms of the will, the charitable bequest herein consists of a remainder interest in the residuum of the estate following a life interest therein and is not to be computed as a "percentage of the taxable estate" as stated by petitioner. Cf. *William Nelson Cromwell, et al., Executors*, 24 B.T.A. 461; *Estate of Leonard S. Waldman*, 46 B.T.A. 291; *Hartford Nat. Bank & Trust Co.* v. *United States*, 106 F. Supp. 76. I further agree that the real disagreement of the parties is as to the value of the remainder interest therein and that the disagreement as to the value of the residuum is, in turn, due entirely to their differences with respect to the treatment to be accorded the executors' commissions and costs of administration mentioned above.

It is petitioner's position that it had the right, under the statutes, to deduct administration expenses either from the gross estate (for estate tax purposes) or from the gross income of the estate (for estate income tax purposes), but under section 162(e) it may not deduct such expenses from both. It further argues that having elected to deduct the administration expenses in question from gross income, the gross estate remained undiminished by such expenses and the chari-

---

[4] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers \* \* \* to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, \* \* \* no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation \* \* \*. If the tax imposed by section 810, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this paragraph, then the amount deductible under this paragraph shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes. The amount of the deduction under this subsection for any transfer shall not exceed the value of the transferred property required to be included in the gross estate. \* \* \*

table remainder interest in the residuum of the estate is likewise not to be diminished by such expenses.

Petitioner had the right to deduct the administration expenses here involved from the gross income of the estate for the purpose of computing the estate's Federal income tax liability. This right is derived from section 23 of the Internal Revenue Code of 1939, and is predicated upon the provisions contained in section 161(a)(3) that "[i]ncome received by estates of deceased persons during the period of administration or settlement of the estate" is subject to the same income taxes as are imposed upon individuals, and the provisions contained in section 162 that the net income of the estate "shall be computed in the same manner and on the same basis as in the case of an individual," with certain exceptions, including the qualification contained in section 162(e).

I would further agree with petitioner that, having elected to deduct the administration expenses here involved from the gross income of the estate for income tax purposes, and not being permitted, because of the provisions of section 162(e), thereafter to deduct such expenses from the gross estate for estate tax purposes, the residuum, upon the basis of which the present value of the charitable bequest herein is to be computed, is likewise not to be diminished by the deduction of such expenses.

So far as I am aware, the precise question involved herein has not heretofore been passed upon by this or any other Court. A similar question relating to the limitation on the amount allowable as a marital deduction has, however, been the subject of two Internal Revenue rulings: Rev. Rul. 55–225, 1955–1 C.B. 460; and Rev. Rul. 55–643, 1955–2 C.B. 386. The majority opinion states these rulings support and are consistent with respondent's position herein. I do not agree. The former ruling involved provisions of the 1939 Code and the latter related provisions of the 1954 Code. In each of the rulings the question was presented as to the effect which an election by the executor to claim certain expenses of administration, otherwise allowable as deductions from the decedent's gross estate, as deductions for Federal income tax purposes, would have upon the value of the adjusted gross estate and thus upon the amount allowable as a marital deduction.

The Commissioner's ruling in Rev. Rul. 55–225, as expressed in the final paragraph thereof, was as follows:

In view of the foregoing, *it is held* that where the executor of an estate elects to claim certain expenses of administration as deduction from the gross income of the estate under section 23(a) of the Internal Revenue Code of 1939 rather than as deductions from the decedent's gross estate under section 812(b) of the Code, the 50 percent limitation on the amount allowable as a marital deduction is determined by subtracting from the entire value of the gross

estate the aggregate amount of the deductions *actually* claimed and allowed under section 812(b) of the Code. [Emphasis supplied.]

The headnote accompanying the ruling includes the final clause "as distinguished from those which would merely be *allowable* under this section." (Emphasis supplied.)

The Commissioner's ruling in Rev. Rul. 55-643, as expressed in both the final paragraph and the headnote, was as follows:

In view of the foregoing, *it is held* that where the decedent has bequeathed to his wife an amount equal to 50 percent of the value of his adjusted gross estate as finally determined for Federal estate tax purposes, less the aggregate amount of other property passing to her which qualifies for the marital deductions, and the executors of the estate elect to claim certain expenses of administration as deductions from the gross income of the estate under sections 162 or 212 of the Internal Revenue Code of 1954 rather than as deductions from the decedent's gross estate under section 2053 of the 1954 Code, the value of the adjusted gross estate is determined by subtracting from the gross estate *only* the deductions authorized by section 2053 which are *actually allowed* as deductions for estate tax purposes. See Rev. Rul. 55-225, C.B. 1955-1, 460. The value of the interest which actually passes to the surviving spouse should not be reduced by the amounts of those items which are not allowed as deductions under section 2053. [Emphasis supplied.]

I think a similar ruling with respect to the nondeduction of the administration expenses from gross estate for the purpose of determining the value of the residuum and consequently the present value of the charitable remainder interest therein, for estate tax purposes, is required in the instant case.